**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Selina Olivas, | ) | No. CV 22-00278-TUC-BGM |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

The plaintiff, Selina Olivas, filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Doc. 1, p. 1)

The Magistrate Judge presides over this action in accordance with 28 U.S.C. § 636(c). (Doc. 12)

The Court affirms the final decision of the Commissioner.  The ALJ properly complied with the instructions of the Appeals Council to reevaluate the claimant's subjective symptom testimony in accordance with Social Security Ruling 16-3p.

PROCEDURAL HISTORY

Olivas filed an application for disability insurance benefits and an application for supplemental security income.  (AR 14),  (Doc. 15-2, p. 15)  She alleged disability beginning on September 14, 2017 due to anxiety, mood disorder, nightmares, and sleep disturbance.  (AR 14);  (AR 256)

1    Olivas's applications were denied initially and upon reconsideration.  (AR 14)  She

2    requested review and appeared with counsel at a telephonic hearing before Administrative Law

3    Judge (ALJ) Charles Davis on October 2, 2019.  (AR 14, 29)

4        At the hearing, Olivas testified that she worked at the Super 8 Motel answering phones.

5    (AR 34)  Before that, she worked at Pizza Hut making pizzas.  (AR 35)   Olivas testified that

6    she cannot work now because she has anxiety and gets confused.  (AR 35)  She said, "I can't

7    be in public places sometimes."  (AR 36)  "I will not go on the bus; I get overwhelmed, and it's

8    just uncomfortable for me . . . ."  (AR 36)  She also has difficulty learning new things.  (AR 35)

9        Olivas cares for her 4-year-old daughter, but if she needs help, the family will come and

10    get the child.  (AR 42)  Her family also does most of her shopping.  (AR 42)

11        On October 30, 2019, ALJ Davis issued his decision in which he found that Olivas was

12    not disabled because she could work as a dishwasher, housekeeper, or assembler.  (AR 14-23)

13    The Appeals Council denied Olivas's request for review on July 15, 2020, making the decision

14    of the ALJ the final decision of the Commissioner.  (AR 1)

15        Olivas subsequently sought review in U.S. District Court.  The case was remanded by

16    stipulation to the Commissioner for further administrative proceedings.  CV 20-00342-TUC-

17    JAS (BGM); (AR 954)  In an order dated May 20, 2021, the Appeals Council vacated the final

18    decision of the Commissioner and remanded the case to the ALJ with instructions to address

19    certain issues.  (AR 962-964)  The ALJ was instructed, among other things, to "[f]urther

20    evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability

21    regulations pertaining to evaluation of symptoms (20 CFR 404.1520 and 416.929) and Social

22    Security Ruling 16-3p."  (AR 963)  In the pending action, Olivas argues that the ALJ failed to

23    properly comply with this particular instruction.

24        On September 15, 2021, Olivas appeared with counsel at a second hearing before ALJ

25    Davis.  (AR 880)  She explained that she works three days per week at a Super 8 Motel.  (AR

26    883)  She works at the front desk and checks people in.  (AR 883)  She limits her hours because

27

28                                          - 2 -

1  "[i]t's frustrating, it gets overwhelming, and sometimes I just won't go in." (AR 885)  Olivas

2  suffers from nightmares that prevent her from getting restful sleep.  (AR 894-895)

3      Olivas reported that she has her own apartment and lives with her five-year-old daughter.

4  (AR 886)  On a typical day, she gets her daughter ready for school and drops her off.  (AR 896)

5  If she is feeling "under the weather" she will "just lounge around the house ."  (AR 896)  If she

6  "wake[s] up hyper," she will cook and clean because "everything has to be perfect."  (AR 896)

7      At the hearing, the ALJ also took testimony from a medical expert, Amy Hamilton, Ph.D.

8  (AR 871, 882, 886)  Hamilton opined that the medical evidence supports a diagnosis of post-

9  traumatic stress disorder.  (AR 887)  She opined that Olivas was mildly limited in the area of

10  "understanding, remembering and applying" information.  (AR 887)  Next, she reported that

11  Olivas has a moderate limitation in interacting with others.  (AR 888)  Third, she considered

12  Olivas's ability to concentrate, persist or maintain pace.  *Id.*  She explained that Olivas has a

13  moderate limitation in this area.  *Id.*  Finally, she opined that Olivas has moderate limitations

14  in her ability to adapt and manage oneself.  (AR 888)  Hamilton opined that Olivas's current job

15  is a good fit for her because she should have "minimal contact with the public, or occasional

16  contact."  (AR 890)

17      The ALJ also took testimony from a vocational expert, Bernard Preston.  (AR 899)

18  Preston was asked to consider an "individual of the Claimant's age and education with no past

19  relevant history" who "retains the residual functional capacity to perform a range of simple

20  routine, a range of work at any exertional level, but is limited to simple routine tasks with only

21  occasional contact with the public."  (AR 899)  Preston opined that such a person could work

22  as a laundry worker, cleaner, or price marker.  (AR 899)

23      ALJ Davis issued his second unfavorable decision on October 27, 2021.  (AR 864-873)

24  On May 17, 2022, the Appeals Counsel declined jurisdiction making the decision of the ALJ

25  the final decision of the Commissioner. (AR 853-856) Olivas subsequently filed this action

26  appealing that final decision.  (Doc. 1)

27

28

1

2      CLAIM EVALUATION

3          To qualify for disability benefits, the claimant must demonstrate, through medically

4    acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity

5    due to a physical or mental impairment that can be expected to last for a continuous period of

6    at least twelve months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). "An individual

7    shall be determined to be under a disability only if [her] physical or mental impairment or

8    impairments are of such severity that [she] is not only unable to do [her] previous work but

9    cannot, considering [her] age, education, and work experience, engage in any other kind of

10   substantial gainful work which exists in the national economy, regardless of whether such work

11   exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for

12   [her] or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A); 42

13   U.S.C. § 1382c(a)(3)(B).

14         Social Security Administration (SSA) regulations require that disability claims be

15   evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520; 20 C.F.R. §

16   416.920.   The first step requires a determination of whether the claimant is engaged in

17   substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). If so, then

18   the claimant is not disabled and benefits are denied. *Id.* If the claimant is not engaged in

19   substantial gainful activity, the ALJ proceeds to step two, which requires a determination of

20   whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §

21   404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). In making a determination at step two, the ALJ

22   uses medical evidence to evaluate whether the claimant has an impairment that significantly

23   limits or restricts his or her physical or mental ability to do basic work activities. *Id.* If the ALJ

24   concludes there is no severe impairment, the claim is denied. *Id.*

25         Upon a finding of severity, the ALJ proceeds to step three, which requires a

26   determination of whether the impairment meets or equals one of several listed impairments that

27   the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20

28   C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the

1   claimant's impairment meets or equals one of the listed impairments, then the claimant is

2   presumed to be disabled, and no further inquiry is necessary.  If the claimant's impairment does

3   not meet or equal a listed impairment, evaluation proceeds to the next step.

4        The fourth step requires the ALJ to consider whether the claimant has sufficient residual

5   functional capacity (RFC)[1] to perform past relevant work.  20 C.F.R. § 404.1520(a)(4);  20

6   C.F.R. § 416.920(a)(4).  If yes, then the claim is denied.  *Id.*  If the claimant cannot perform any

7   past relevant work, then the ALJ must move to the fifth step, which requires consideration of

8   the claimant's RFC to perform other substantial gainful work in the national economy in view

9   of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4);  20 C.F.R.

10  § 416.920(a)(4).

11       "There are two ways for the [ALJ] to meet the burden of showing that there is other work

12  in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of

13  a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt.

14  404, subpt. P, app. 2 [the Grids]." *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

15

16      <u>The ALJ's Findings</u>

17       At step one of the disability analysis, the ALJ found that Olivas "has not engaged in

18  substantial gainful activity since September 14, 2017, the alleged onset date . . . ."  (AR 867)

19  At step two, he found that Olivas "has the following severe impairment: post-traumatic stress

20  disorder (PTSD) with anxiety and depressive symptoms."  (AR 867)

21       At step three, the ALJ found that Olivas "does not have an impairment or combination

22  of impairments that meets or medically equals the severity of one of the listed impairments in

23  20 CFR, Part 404, Subpart P, Appendix 1 . . . ."  (AR 867)  The ALJ considered the four

24  functional areas that, according to the social security regulations, should be evaluated when

25  assessing mental disorders.  These four broad functional areas are known as the "paragraph B"

26

27  _____

28      [1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations.  20 C.F.R. §§ 404.1545, 416.945.

1   criteria.  (AR 867)  First, the ALJ found that Olivas has a mild limitation in the area of

2   understanding, remembering or applying information. (AR 868) Next, he found that Olivas has

3   a moderate limitation in interacting with others.  *Id.*  Third, he considered Olivas's ability to

4   concentrate, persist or maintain pace.   *Id.*  He found that Olivas has a moderate limitation in

5   this area.  *Id.*  Finally, the ALJ decided that Olivas has moderate limitations in her ability to

6   adapt and manage oneself. (AR 868) The ALJ concluded that "[b]ecause the claimant's mental

7   impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the

8   'paragraph B' criteria are not satisfied."  (AR 868)

9       The ALJ then analyzed Olivas's residual functional capacity (RFC).  He found that

10  Olivas has the residual functional capacity to perform "a full range of work at all exertional

11  levels but with the following nonexertional limitations:  she is limited to simple, routine tasks

12  with only occasional contact with the public."  (AR 869)

13      At step four, the ALJ found that Olivas has "no past relevant work."  (AR 872)  At step

14  five, the ALJ found, based on the testimony of the vocational expert, that "[c]onsidering the

15  claimant's age, education, work experience, and residual functional capacity, there are jobs that

16  exist in significant numbers in the national economy that the claimant can perform" such as

17  laundry worker, cleaner, or price marker. (AR 873)  The ALJ then concluded that Olivas is not

18  disabled.  (AR 873)

19

20      <u>STANDARD OF REVIEW</u>

21      The findings of the Commissioner are meant to be conclusive.    42 U.S.C. §§ 405(g),

22  1383(c)(3).  The court will "set aside a denial of Social Security benefits only when the ALJ['s]

23  decision is based on legal error or not supported by substantial evidence in the record." *Revels*

24  *v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)  (punctuation modified).  "Substantial evidence

25  means more than a mere scintilla, but less than a preponderance." *Revels*, 874 F.3d at 654.  "It

26  means such relevant evidence as a reasonable mind might accept as adequate to support a

27  conclusion." *Id.*  "Where evidence is susceptible to more than one rational interpretation, the

28  ALJ's decision should be upheld." *Id.*  But the court "must consider the entire record as a

1    whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's]

2    conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."

3    *Id.*  The court will "review only the reasons provided by the ALJ in the disability determination

4    and may not affirm the ALJ on a ground upon which he did not rely." *Id.*

5

6    Discussion

7        Olivas maintains that "the case should be remanded for reconsideration of evidence

8    because the ALJ failed to follow the Appeals Council's remand order regarding [her] symptom

9    testimony." (Doc. 18, p. 2)  She argues specifically that the ALJ "failed to consider factors

10   apart from objective evidence in analyzing Ms. Olivas' subjective testimony." (Doc. 18, p. 8)

11       The regulations provide that when a case is remanded by the Appeals Council, "[t]he

12   administrative law judge shall take any action that is ordered by the Appeals Counsel and may

13   take any additional action that is not inconsistent with the Appeals Council's remand order."

14   20 C.F.R. § 404.977(b); 20 C.F.R. § 416.1477(b).

15       As the Court noted above, on remand from the district court, the Appeals Council

16   specifically instructed the ALJ to "[f]urther evaluate the claimant's alleged symptoms and

17   provide rationale in accordance with the disability regulations pertaining to evaluation of

18   symptoms (20 CFR 404.1520 and 416.929) and Social Security Ruling 16-3p." (AR 963)

19       Social Security Ruling (SSR) 16-3p was adopted "because of the wide variety of effects

20   experienced by different patients with the same documented medical conditions." *Mendenhall*

21   *v. Colvin*, 2016 WL 4250214, at *2 (C.D. Ill. Aug. 10, 2016).  "Under [that] rule, the ALJ is to

22   evaluate the claimant's symptoms taking into consideration the entire medical record, the

23   claimant's expressions concerning the effects of the symptoms, the medical source's opinions,

24   and any other relevant evidence."  *Id.*  The ALJ cannot discount the claimant's subjective

25   symptom testimony based only on the "objective" medical evidence.   SSR 16-3p, 2017 WL

26   5180304, *5; *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[W]e will not reject your

27   statements about the intensity and persistence of your pain or other symptoms or about the effect

28   your symptoms have on your ability to work solely because the available objective medical

1   evidence does not substantiate your statements.").  If he could, many claimants would be put

2   at a disadvantage, particularly those with mental impairments.  *See Poulin v. Bowen*, 817 F.2d

3   865, 873 (D.C. Cir. 1987) ("[U]nlike a broken arm, a mind cannot be x-rayed . . . .").

4        The Appeals Council also referenced in its remand order the regulations at 20 C.F.R. §§

5   404.1520 and 416.929.  These sections discuss, in general, the five-step sequential evaluation

6   process.  They do not give any specific guidance regarding the ALJ's evaluation of the

7   claimant's subjective symptom testimony other than to say that "[w]e will consider all evidence

8   in your case record when we make a determination or  decision whether you are disabled."  20

9   C.F.R. § 404.1520(a)(3); 20 C.F.R. § 416.929(a)(3).  Further guidance on the issue is provided

10  in the regulations as follows:

> Because symptoms sometimes suggest a greater severity of impairment than can
> be shown by objective medical evidence alone, we will carefully consider any
> other information you may submit about your symptoms.  The information that
> your medical sources or nonmedical sources provide about your pain or other
> symptoms (e.g., what may precipitate or aggravate your symptoms, what
> medications, treatments or other methods you use to alleviate them, and how the
> symptoms may affect your pattern of daily living) is also an important indicator
> of the intensity and persistence of your symptoms.

15  20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3).

16       The court finds that the ALJ properly complied with the instructions of the Appeals

17  Council.  First, the court notes that "the Appeals Council denied plaintiff's request for review

18  of the second ALJ's adverse decision."  *Bindner v. Astrue*,  2008 WL 2557480, at *1–2 (C.D.

19  Cal. June 23, 2008);  (AR 853-856).  "Although not dispositive of the issue, the Appeals

20  Council's conclusion that there was no reason to review the second ALJ's decision is entitled

21  to some weight."  *Id.*  Presumably the Council knew what it wanted the ALJ to do on remand

22  and found that he had done so.  Moreover, the Court has examined the ALJ's decision and

23  concludes that he properly evaluated the claimant's subjective symptom testimony pursuant to

24  SSR 16-3p.

25       The ALJ summarized his analysis of Olivas's subjective symptom testimony as follows:

26  "After careful consideration of the evidence, the undersigned finds that the claimant's medically

27  determinable impairment could reasonably be expected to cause the alleged symptoms;

however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 869) The ALJ then examined the medical record in more detail and found that while Olivas alleged significant psychological impairment--her mental status exams, and other evidence in the record--indicated that her functional limitations were not so profound that she was unable to work.

For example, he noted that during "a consultative examination in May 2018, the claimant again reported nightmares and feelings of anxiety." (AR 870) "Other symptoms reported included irritability, lack of motivation, and periods of euphoria." *Id.* Nevertheless, she "presented with appropriate dress and grooming" and "made good eye contact, was pleasant and cooperative, and her memory was adequate." *Id.* "The claimant's affect was bright, her thoughts were coherent to tangential, and her speech was rapid," but there was "no note of pressured or incoherent speech." *Id.* Also, she "scored 30 of 30 on a mini-mental status exam." *Id.*

In July of 2018, Olivas "reported her anxiety level was 9 of 10 and her depression was 6 of 10, with 10 being the worst." (AR 870) "She reported sleeping eight hours but waking feeling unrested and lacking motivation." *Id.* She "had anxious mood and congruent affect," but "she was calm and cooperative with well-groomed appearance, good insight and judgment, good concentration, intact memory, and logical thoughts." *Id.* She "was oriented and had appropriate mood and affect." *Id.*

Olivas continued to complain of nightmares and anxiety in March of 2019, but she "was observed with good eye contact, normal speech, calm and cooperative attitude, logical thoughts and good memory, concentration, insight, and judgment, but irritable mood." (AR 870) "Later in 2019 she again had an irritable mood but also presented with fair judgment and concentration and circumstantial thoughts." *Id.* "At other times, her judgment and thoughts had returned to normal, but her concentration continued to be fair." *Id.*

In 2020 and 2021, Olivas "continued to report symptoms of anxiety," but "examinations continued to show normal alertness, thoughts, and speech." (AR 870) The ALJ explained that

1  "[t]hese records showing at least fair concentration, judgment and insight and irritable  mood
2  but good cooperation support a finding that the claimant can perform simple, routine tasks with
3  occasional interaction with the public."

4  The ALJ noted that while "the record shows the claimant consistently reported anxiety
5  and nightmares, the record also showed she maintained good mental functioning."  (AR 870)
6  "[S]he was consistently observed with fair or good memory, concentration, judgment, and
7  insight." (AR 870)  "She was also noted to be calm and cooperative, although she did at times
8  have an irritable mood." (AR 870)  "The [medical] record . . . does not show her being unable
9  to be around or interact with others, or that she was unable to concentrate for examinations."
10 (AR 870-871)

11 The ALJ also considered the medical source opinions.  He found the opinions of Amy
12 Hamilton, Ph.D., to be persuasive because she "supported her opinions with numerous citations
13 to the evidence in the treatment record." (AR 871)  Hamilton opined that Olivas "can perform
14 simple, routine tasks with limited public interaction," which the ALJ found to be "consistent
15 with the record showing fair concentration and judgment and irritable, but cooperative, mood."
16 (AR 871)  The ALJ found that the "prior administrative findings of the State Medical
17 Consultants are also persuasive with regards to the claimant's limitations." (AR 871)  He
18 concluded that while they "are now several years old," they "are consistent with the record,
19 including the more recent records . . . ."  On the other hand, the ALJ found that the "opinions
20 of the psychological consultative examiner Noelle Rohen, Ph.D. are not persuasive." (AR 871)
21 He found her opinions "are not supported by [her] examination." *Id.*

22 The ALJ also considered Olivas's record of daily activities.  He noted that Olivas "needs
23 no reminders for personal care or to take medication." (AR 868)  He acknowledged Olivas's
24 statement that she "only goes out when she has to and that she sometimes becomes anxious
25 around other people." *Id.*  "She also claims she becomes irritated with people." *Id.*  "However,
26 she reported she engages in activities such as going out with her kids or going to the movies a
27 few times per week." *Id.*  "She can also perform tasks such as household chores, cleaning,
28 driving, and handling money." *Id.*

1   The Ninth Circuit has found that "[w]hile a claimant need not 'vegetate in a dark room'

2   in order to be eligible for benefits . . . the ALJ may discredit a claimant's testimony when the

3   claimant reports participation in everyday activities indicating capacities that are transferable

4   to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)  "Even where those

5   activities suggest some difficulty functioning, they may be grounds for discrediting the

6   claimant's testimony to the extent that they contradict claims of a totally debilitating

7   impairment." *Id.*  Here, Olivas's daily activities indicate that she has at least a limited ability

8   to be around people and concentrate on the task at hand.  *See also Molina*, 674 F.3d at 1113

9   (The claimant's subjective testimony of disability due to anxiety and panic attacks was

10  discounted in part due to her daily activities, "which involved walking her two grandchildren

11  to and from school, attending church, shopping, and taking walks.").

12      The Court concludes that the ALJ followed the instructions of the Appeals Council and

13  considered all of the evidence in the medical record when evaluating Olivas's subjective

14  symptom testimony in accordance with SSR 16-3p.

15      Olivas argues to the contrary that the ALJ's analysis was error.  She asserts that mental

16  status observations that she was "calm, cooperative, with good insight and judgment, good

17  concentration, intact memory, and appropriate mood and affect" are *objective* factors and are

18  insufficient, by themselves, to discount the claimant's subjective symptom testimony. (Doc. 18,

19  pp. 7-8);   The Court agrees but only to a point.  SSR 16-3p instructs that the ALJ cannot

20  discount a claimant's subjective symptom testimony by reference to objective factors alone.  *See*

21  SSR 16-3p, 2017 WL 5180304, *5  ("[W]e will not disregard an individual's statements . . .

22  solely because the objective medical evidence does not substantiate the degree of impairment-

23  related symptoms alleged by the individual.")  The Court therefore agrees that it would be error

24  for the ALJ to rely only on objective factors.  But he did not do that.  The ALJ considered the

25  entire record including the medical opinion evidence, the claimant's record of daily activities,

26  and her subjective statements.

27      In her reply brief, Olivas concedes that the ALJ considered her record of daily activities,

28  but she argues that they appear at step 3 of the disability analysis and should have been

1    considered later, when the ALJ was addressing her subjective symptom testimony.  (Doc. 22,

2    pp. 2-3)  The Court agrees that it would be easier to follow the ALJ's reasoning if all the factors

3    related to his analysis of Olivas's subjective symptom testimony appeared in the same place.

4    Nevertheless, reading the opinion as a whole, the ALJ's reasoning can be discerned.  And that

5    is enough.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (The ALJ's decision

6    will not be overturned if "the agency's path may reasonably be discerned, even if the agency

7    explains its decision with less than ideal clarity.").

8         On this issue, the Commissioner cited to *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th

9    Cir. 2022) for the proposition that "[a] reviewing court considers the agency's decision as a

10   whole, 'looking to *all* the pages of the ALJ's decision,' when determining whether substantial

11   evidence supports that decision."  (Doc. 21, p. 6)  The Court agrees that *Kaufmann* is on point

12   here.

13        Olivas, however, argues that *Kaufmann* is distinguishable because the lower court in that

14   case erroneously failed to consider aspects of the ALJ's reasoning that appeared *within the same*

15   *RFC analysis section*.  Here, Olivas asserts, the ALJ's mention of her record of daily activities

16   appears in a different section altogether.  This, she reasons, is a legitimate reason for

17   distinguishing the *Kaufmann* decision.  The Court is not convinced.

18        The *Kaufmann* court did not premise its decision on the fact that the information

19   overlooked by the District Court appeared in the same section where the ALJ concluded that

20   "Claimant's daily activities conflicted with her testimony about the extent of her limitations."

21   *Kaufmann*, 32 F.4th at 851.  (In fact, it is unclear where in the decision the court found the

22   missing information.)  It is more likely that when the *Kaufmann* court said that the reviewing

23   court should consider "*all* the pages of the ALJ's decision," it meant "*all* the pages." *Kaufmann*

24   *v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022)  (emphasis in original)

25

26

27

28

Moreover, mental status observations are relevant to the disability analysis even if the ALJ cannot rely on them alone.[2]  *See Gopher v. Comm'r of Soc. Sec.*, 281 F. Supp. 3d 1102, 1119 (E.D. Wash. 2017)  ([T]he medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.).  In this case, the Appeals Council noted with approval the ALJ's use of the mental status observations in the administrative record.  (AR 853)  The Council stated as follows:

> The hearing decision noted that the medical evidence in the record indicated that the claimant consistently presented with appropriate dress and grooming, that the claimant made good eye contact, that the claimant was pleasant and cooperative, and that the claimant displayed adequate memory . . . .  The hearing decision noted that the medical evidence in the record included observations that the claimant was calm cooperative, displaying good insight and judgement [sic], displaying good concentration with intact memory, and the claimant was oriented with appropriate mood and affect. . . . .  We find that the Administrative Law Judge appropriately considered Social Security Ruling 16-3p in adequately evaluating the claimant's subjective symptoms.

(AR 853)  Apparently, the Appeals Council believed that the mental status observations made by Olivas's medical providers were properly considered by the ALJ when he was applying SSR 16-3p.  (AR 853)

Olivas further asserts that the medical record contains other entries that support her subjective symptom testimony.  (Doc. 18, p. 8)  "For instance, in July 2018, Ms. Olivas displayed anxious mood with congruent affect; reported paranoia; and explained that her anxiety medications were not relieving her anxiety and she was experiencing lack of motivation."  (Doc 18, p. 8)  (citing AR 701)  Similar reports appear in the medical record for March of 2019, August of 2019, September of 2019, October of 2019, May of 2020, September of 2020, October of 2020, and January of 2021.  (Doc. 18, pp. 8-9)

---

[2]  The Court assumes, without deciding, that Olivas is correct, and observations that she was "calm, cooperative, with good insight and judgment, good concentration, intact memory, and appropriate mood and affect" are "objective medical evidence."  *But see* SSR 16-3p, 2017 WL 5180304, *3  ("We call the medical evidence that provides signs or laboratory findings objective medical evidence."); *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)  ("Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption.").

1    Olivas's argument, however, overlooks this court's standard of review.  It does not

2    matter if the evidence would support a different result.  What matters is whether the ALJ's

3    decision complied with the instructions of the Appeals Council, followed the appropriate rules

4    and regulations, and is supported by substantial evidence.  The Court concludes that it did, and

5    it is.  *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)  ("Where evidence is susceptible

6    to more than one rational interpretation, the ALJ's decision should be upheld.");  *see, e.g.,*

7    *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)  (The ALJ properly determined that the

8    claimant's anxiety disorder was not disabling by considering her daily activities, her work

9    history, her demeanor and presentation during medical exams, and the opinion of the examining

10   psychiatrist.).

11

12       IT IS ORDERED that the Commissioner's final decision in this matter is AFFIRMED.

13   The Clerk of the Court is instructed to enter judgment accordingly and close this case.

14

15       DATED this 31st day of May, 2023.

16

17

18       _____

19       Honorable Bruce G. Macdonald
         United States Magistrate Judge

20

21

22

23

24

25

26

27

28